```
         THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| BARBARA JOHNSON, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| | Civil No. 09-1799 (JBS/KMW) |
| v. | |
| NOVASTAR MORTGAGE, INC., et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Matthew Benjamin Weisberg, Esq.
PROCHNIAK WEISBERG, PC
7 South Morton Avenue
Morton, PA 19070
     Counsel for Plaintiff Barbara Johnson

Peter J. Leyh, Esq.
BRAVERMAN KASEY P.C.
One Liberty Place, 56th Floor
1650 Market Street
Philadelphia, PA 19103
     Counsel for NovaStar Mortgage, Inc.

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

     This matter is before the Court on the motion for summary judgment of Defendant NovaStar Mortgage, Inc.  [Docket Item 67.] Plaintiff Barbara Johnson alleges a foreclosure rescue scam in which she was lured into two sale transactions of her house that she believed would keep her in her home, but resulted in her losing her home to foreclosure and being evicted.  This Court previously denied Defendant NovaStar's motion to dismiss for lack

of standing and for failure to state a claim.  See Johnson v. NovaStar Mortgage, Inc., 698 F. Supp. 2d 463 (D.N.J. 2010). [Docket Items 35 & 36.]  Defendant NovaStar now moves for summary judgment against Plaintiff's claims for rescission under the Truth-in-Lending Act ("TILA") and for relief under the New Jersey Consumer Fraud Act ("CFA") and for civil conspiracy.  Defendant argues that Plaintiff's right to rescission under the TILA ended in 2008 when her house was sold in a sheriff's sale, and that Plaintiff fails to point to an issue of material fact regarding Defendant NovaStar's liability under the CFA, or conspiracy liability.

For the reasons stated below, the Court will grant Defendant's motion because the Court concludes that Plaintiff's right to rescission under TILA expired at the sale of Plaintiff's house, and further that Plaintiff fails to point to a dispute of fact regarding Defendant's conspirator or vicarious liability for the acts of the other Defendants in this action.

**II.  BACKGROUND**

The following facts are taken from the Parties' statements of undisputed facts that are properly supported in the record or not otherwise disputed on this motion.  Where facts are disputed between the parties, the Court will identify the dispute.

Plaintiff originally purchased her house in Sicklerville, New Jersey, in the mid-1990s. Def. Ex. C, Johnson Dep. at 13:2-19; Def. Ex. K, Dallah Dep. at 27:19-28:2. Sometime in 2005, Plaintiff fell behind on her mortgage payments, because injuries and other occupational disruptions prevented her from working as a foster parent, which was her sole source of income. Johnson Dep. at 15:4-21; Dallah Dep. at 19:18-23:8. Plaintiff learned from a friend about Defendant Rick Mason, who did business as Innovative Mortgage Solutions. Johnson Dep. at 20:8-16. Mason recommended that Plaintiff sell her house to her daughter, Ravenda Dallah, in order to "cash out" the equity in the property which she could then use to pay the new mortgage loan that Dallah would obtain, eventually allowing Plaintiff to improve her own credit score sufficient to allow her to repurchase the house in her own name. Id. at 20:17-21:21.

Plaintiff accepted Mason's plan. On June 7, 2005, Plaintiff attended a closing with her daughter at Trinity Insurance Abstract, LLC, at which lender New Century (not a party to the instant action) closed a loan of $175,000 of which Plaintiff received roughly $20,000. Id. 21:22-24:24; Def. Ex. D, HUD-1 Settlement Sheet. At the closing, Plaintiff signed over the deed to her daughter. Def. Ex. E, 2005 Deed.

After the sale, Plaintiff remained in the home with her daughter. See Dallah Dep. 40:9-23. Mason had told Plaintiff

that after approximately six months of paying the new mortgage on the house, Plaintiff would be able to refinance the mortgage in her own name.  Johnson Dep. 25:11-14.  However, by the time the $20,000 from the 2005 transaction ran out, and Plaintiff was again unable to make mortgage payments, she had not yet refinanced the house in her own name.  Id. 26:3-23.  As a result, Plaintiff reached out again to Mason, who proposed yet another "sale," this time to an "investor," named Terence Ward, once again in anticipation of Plaintiff eventually repurchasing the home in her own name.  Id. 26:21-29:13.  Prior to the second transaction, Mason promised Johnson that Ward would sign a letter promising to sell the house back to Plaintiff at some point in the future, but Mason never made good on this promise.  Id. 32:25-33:4.  As with the first transaction, the parties to the 2006 transaction anticipated that Plaintiff would pay the mortgage payments on the new loan.  Id. 30:1-22, 35:11-13.  Innovative (presumably through Mason) represented to Plaintiff that if she successfully made payments on the new mortgage for "three to four months," then Innovative would refinance the mortgage in Plaintiff's name.  Id. 35:23-36:1.

 The transaction took place on June 23, 2006, with Dallah "selling" the house to Ward for a contract sale price of $238,000.  Def. Ex. F, HUD-1 Settlement Sheet.  Defendant Innovative Mortgage Solutions was listed as the mortgage lender

4

in the transaction, Ravenda Dallah as the seller, and Terence Ward as the borrower. Id. A down payment of $12,150 from the borrower is listed on the settlement sheet. Id.

Plaintiff received cash from the transaction sufficient to allow her to make payments on the new mortgage for three to four months, but the amount she received was considerably less than the $43,421.94 listed as "Cash to seller" on the HUD-1 settlement sheet. Johnson Dep. 37:5-10; Dallah Dep. 59:3-60:6; Def. Ex. F.

Innovative later assigned the Ward loan to Defendant NovaStar on July 5, 2006. Def. Ex. I, Notice of Assignment; Pl. Ex. 1, Purchase Worksheet. Prior to purchasing the Ward loan from Innovative, NovaStar took certain steps to verify the identity of Ward, the borrower, and his ability to pay back the mortgage, such as verifying his social security number and his employment. Pl. Ex. 7, Novalinq Conversation Log. However, NovaStar did not verify the source of the $12,150 down payment or that it had been paid prior to purchasing the loan from Innovative. Id.; Pl. Ex. 9, Ward Loan Application.

The record is not entirely clear as to whether Plaintiff initially sent her mortgage payments to Terence Ward, or directly to NovaStar. Dallah says that the payments were initially sent to Ward, while Plaintiff only describes sending payments to NovaStar. Dallah Dep. 73:16-74:12; Johnson Dep. 42:8-23. The record is clear, however, that Plaintiff sent approximately nine

5

mortgage payments directly to NovaStar, the last being paid on January 8, 2007.  Pl. Ex. 11.  Eventually, after Plaintiff stopped paying the mortgage, NovaStar initiated foreclosure proceedings, naming as defendants Terrence Ward and Ravenda Dallah, but apparently not Plaintiff Barbara Johnson.  Def. Ex. L, Indenture.  A judgment of foreclosure was entered on November 14, 2007.  Id.  On February 20, 2008, NovaStar purchased the house at a sheriff's sale.  Id.  Plaintiff was evicted from the house later in 2008.  Def. Ex. M, March 18, 2008 Eviction Notice.

Plaintiff filed her Complaint in this matter on April 15, 2009 [Docket Item 1] and her Amended Complaint on June 22, 2009.  [Docket Item 8.]  Plaintiff's Amended Complaint names as defendants NovaStar Mortgage, Inc., and several others, including Rick Mason, Terence Ward and Innovative Mortgage Solutions Inc.  In her Amended Complaint, Plaintiff alleges, inter alia, that NovaStar was the mortgage lender that closed the loan on June 23, 2006; that Mason had a contact who was an employee of NovaStar with whom Mason conspired to create an inflated appraisal of Plaintiff's house, and to ensure the closing "would proceed no matter the ability or intent of Ward to make payments on the property"; and that NovaStar received application and commitment fees from the June 2006 Dallah/Ward transaction.  Am. Compl. ¶¶

6

29, 34, 35, 37.  After the close of discovery, the Court finds no support for these allegations in the record on summary judgment.[1]

Defendant NovaStar moved to dismiss the Amended Complaint on December 28, 2009. [Docket Item 31.]  The Court, assuming the truth of the allegations in the Amended Complaint, denied the motion, finding that Plaintiff had alleged the existence of an equitable mortgage between Plaintiff and Defendant NovaStar, and therefore stated a claim for rescission under the TILA and damages under the CFA. [Docket Items 35 & 36.]

After the completion of discovery, Defendant NovaStar has now moved for Summary Judgment.  [Docket Item 67.]  In addition to filing opposition to Defendant's motion, Plaintiff subsequently filed a motion for leave to file a sur-reply to Defendant's motion.  [Docket Item 74.]  The Court will grant

---

[1] With respect to whether any application and commitment fees from the June 23, 2006 transaction were paid to NovaStar, Plaintiff contends that evidence does support this allegation. Pl.'s Resp. to Def.'s Statement of Material Facts Not in Dispute ¶ 19.  However, the documentary evidence to which Plaintiff points is not included in any of the documents submitted to the Court.  Therefore, the Court is unable to consider this unsupported allegation as raising a dispute of fact, pursuant to L. Civ. R. 56.1(a), which states in relevant part: ". . . The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute <u>and citing to the affidavits and other documents submitted in connection with the motion</u>; <u>any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion</u> . . . ." (emphasis added).

Plaintiff's motion to for leave to file a sur-reply <u>nunc pro tunc</u>, and has considered Plaintiff's arguments contained therein.

**III. DISCUSSION**

    **A.    Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  <u>Id.</u>  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  <u>Id.</u>

Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); <u>United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).

    [Rule 56] mandates the entry of summary judgment,
    after adequate time for discovery and upon motion,

> against a party who fails to make a showing
> sufficient to establish the existence of an element
> essential to that party's case, and on which that
> party will bear the burden of proof at trial. In
> such a situation, there can be "no genuine issue as
> to any material fact," since a complete failure of
> proof concerning an essential element of the
> nonmoving party's case necessarily renders all other
> facts immaterial.

Celotex, 477 U.S. at 323.

However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."). Procedurally, the parties seeking and opposing summary judgment must comply with the requirements for filing a statement of material facts not in dispute and a response thereto, as set forth in L. Civ. R. 56.1(a).

    **B.    TILA Rescission Statute of Limitations**

Defendant NovaStar first seeks summary judgment against Plaintiff's claim for rescission of the mortgage under TILA. Defendant argues that, assuming, for the purposes of this motion only, that an equitable mortgage existed between Plaintiff and NovaStar, Plaintiff's right to rescission expired after the house

was sold at the sheriff's sale in February of 2008, more than one year prior to Plaintiff's initial Complaint in this action.

In support of this argument, Defendant points to the TILA rescission statute of limitations, which states that where the creditor does not make the required disclosures, the consumer's right to seek rescission "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." 15 U.S.C. § 1635(f). Defendant argues that, under the plain language of this statute, Plaintiff's right to rescind her equitable mortgage expired in February of 2008 when the house was sold in a sheriff's sale.

Plaintiff argues in opposition that the February 2008 sheriff's sale of Plaintiff's house did not end Plaintiff's right to rescind the mortgage because Plaintiff Barbara Johnson, the equitable owner of the house, was not named as a defendant in the foreclosure action. In support of her argument, Plaintiff points to New Jersey Court Rule 4:64-1(b)(11), which governs the proper contents of a mortgage foreclosure complaint. According to the rule, the foreclosure complaint was required to state

> the names of all parties in interest whose interest is subordinate or affected by the mortgage foreclosure action and, for each party, a description of the nature of the interest, with sufficient particularity to give the court and parties notice of the transaction or occurrence on which the interest is based including recording date of the lien, encumbrance, or instrument creating the interest;

10

N.J.R. 4:64-1(b)(11). Thus, Plaintiff argues, because Plaintiff was not named in the foreclosure complaint, the foreclosure was not proper and therefore Plaintiff's right to rescission under the TILA did not expire at the subsequent sheriff's sale.

The Court can find no legal support for Plaintiff's interpretation of 15 U.S.C. § 1635(f). The statute's plain language states that the right to rescission expires "upon the sale of the property" without qualification. As Defendant points out, federal courts that have considered the issue have held that a sheriff's sale after foreclosure constitutes a "sale" under the statute. See Hintz v. JPMorgan Chase Bank, N.A., Civ. No. 10-2825, 2011 WL 579339 * 5 (D. Minn. Feb. 8, 2011) ("the right to rescind expired at the foreclosure sale"). Whether or not the foreclosure action leading to the sheriff's sale complied in all respects with the notice requirements of the New Jersey Court Rules would not seem to undermine the crucial fact under the statute that the property was sold more than a year prior to Plaintiff's Complaint providing notice that she was seeking rescission.[2] Consequently, the Court will grant summary judgment

---

[2] The Court also notes that rescission under TILA would seem to be an unavailable remedy in this action, as Plaintiff has not demonstrated in the record any ability to tender payment on the net proceeds she received under the loan, which is an additional requirement for rescission under TILA. See Jobe v. Argent Mortgage Co., LLC, 373 F. App'x 260, 262 (3d Cir. 2010) ("courts have denied rescission where the borrowers were unable to tender payment of the loan amount.")

against Plaintiff's TILA rescission claim against Defendant NovaStar.

### C. Civil Conspiracy

Secondly, Defendant argues that summary judgment is warranted against Plaintiff's claim of civil conspiracy against Defendant NovaStar. In the Court's March 15, 2010 Opinion, the Court concluded that, based on the facts alleged in the Amended Complaint, "Plaintiff has alleged specific facts to support her claim that NovaStar, Mason, and Ward agreed to perpetrate their fraudulent scheme." Johnson v. NovaStar, 698 F. Supp. 2d at 473. Defendant argues that, after discovery, Plaintiff can point to no evidence in the record raising a dispute of fact regarding such an agreement between NovaStar and either Mason or Ward.

Plaintiff responds that there is evidence in the record that NovaStar was aware of the scheme through indications that the 2006 Ward loan was irregular. Specifically, Plaintiff claims three categories of evidence support such a finding. First, Plaintiff points to evidence in the record demonstrating that NovaStar agreed to purchase the mortgage from Innovative despite the fact that NovaStar was unable to verify the source of Ward's down payment. Second, Plaintiff points to evidence that NovaStar was aware that the sale price of the house had increased from $225,000 to $238,000 without any evidence of negotiation or public listing of the house. Third, Plaintiff points to evidence

that the seller (Dallah) would continue to reside in the property after the sale.[3]

The Court concludes that no evidence in the record raises a dispute of fact over whether Defendant NovaStar entered into an agreement with Ward, Mason, or Innovative to achieve an unlawful result, as required under New Jersey law for civil conspiracy liability to attach. As the Third Circuit has held, in New Jersey,

> [t]here are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.

Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003). The Court finds no evidence of an agreement between NovaStar and any other party regarding Plaintiff's ownership of the house. Indeed, the record bears no evidence that NovaStar was aware of Plaintiff's existence prior to its purchase of the loan from Innovative.[4] That NovaStar

---

[3] While not raised specifically in this area of Plaintiff's opposition brief, the Court notes that elsewhere in Plaintiff's briefing, Plaintiff has also pointed to the fact that Plaintiff herself paid the mortgage directly to Defendant NovaStar for a period of time in the fall of 2006. The Court has, therefore, also considered this evidence on this point.

[4] That NovaStar later received payment on the Ward loan from Plaintiff does not raise an issue of fact regarding whether NovaStar knew about Plaintiff's relationship to the loan prior to purchasing the loan.

decided to purchase the loan without first seeing proof of Ward's down payment, and with some indication that the sale price increased in the month prior to closing provides no proof of any agreement between NovaStar and the other Defendants.

Further, the evidence is clear that NovaStar took steps to attempt to verify the validity of the borrower's identity, such as calling and confirming his employment, which is inconsistent with any conclusion that NovaStar had entered into an agreement to commit mortgage fraud with the other Defendants in this transaction.  The Court finds that no reasonable factfinder could conclude, on the basis of this evidence, that an agreement to achieve an unlawful purpose existed between NovaStar and the other Defendants prior to NovaStar's purchase of the loan from Innovative in July of 2006.

Plaintiff additionally argues that, even in the absence of a civil conspiracy, Defendant NovaStar is vicariously liable for any wrongs committed by Innovative or Mason pursuant to the New Jersey statutory holder rule, wherein the assignee of a consumer contract is liable for the acts of the assignor.  See N.J. Stat. Ann. § 17:16C-38.2 ("Any subsequent holder of a consumer note shall be subject to all claims and defenses of the retail buyer against the retail seller arising out of the transaction").

The Court finds Plaintiff's argument unpersuasive.  The statutory holder rule does not apply to the 2006 mortgage

14

transaction, as Defendant points out, because the statute governs retail installment contracts, limited to sales of goods or services "having a cash price of $10,000 or less." N.J. Stat. Ann. § 17:16C-1(a). Thus, Plaintiff has not demonstrated that Defendant NovaStar is vicariously liable for the allegedly fraudulent acts of Innovative, Mason or Ward merely as a result of the assignment of the loan. The Court will, consequently, grant summary judgment against Plaintiff's claim of civil conspiracy against Defendant NovaStar.

### D. New Jersey Consumer Fraud Act

Finally, Defendant NovaStar argues that summary judgment is warranted against Plaintiff's CFA claims. Defendant argues that the only "unlawful" act chargeable to NovaStar under the CFA is NovaStar's omission of statutory TILA notice to Plaintiff. Additionally, Defendant argues, under the CFA, when the alleged unlawful act is an omission, the plaintiff must prove defendant's knowledge or intent. "[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud. Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994) (emphasis original). Thus, Defendant argues, to survive summary judgment, Plaintiff must point to some evidence in the record tending to prove Defendant's knowledge and intent of the wrongful act, which Plaintiff has failed to do.

15

Plaintiff responds to this argument by insisting that the affirmative acts allegedly committed by Innovative, Mason and Ward are chargeable to Defendant NovaStar as discussed, supra. However, the Court has already concluded that Plaintiff's theories of civil conspiracy and vicarious liability do not survive summary judgment.  Additionally, the Court agrees with Defendant that to prove a CFA claim on the basis of an omission, Plaintiff would be required to point to evidence of knowledge and intent, which the Court agrees Plaintiff has not done on this record.  For these reasons, therefore, the Court concludes that summary judgment is warranted against Plaintiff's CFA claim against Defendant NovaStar.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will grant Defendant NovaStar's motion for summary judgment.  The Court has concluded that Plaintiff's right to rescission under TILA expired after the sale of the house, under the plain language of 15 U.S.C. § 1635(f).  Additionally, the Court has concluded that Plaintiff has not pointed to a dispute of fact regarding the existence of an agreement between Defendant NovaStar and the other Defendants in this action, which therefore warrants the entry of summary judgment as to Plaintiff's civil conspiracy claim.  And finally, because the only acts chargeable to Defendant NovaStar in this

action are its own, the Court concludes that summary judgment is warranted as to Plaintiff's CFA claim because there is no evidence of knowledge or intent to omit any information to Plaintiff in the Defendant's 2006 purchase of the Ward Mortgage. The Court will, therefore, enter summary judgment against all of Plaintiff's claims against Defendant NovaStar. The accompanying Order shall be entered.


**September 29, 2011**　　　　　　　　　　　　 **s/ Jerome B. Simandle**
Date　　　　　　　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge